# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

COLLIN M. MERRILL, )
)
       Petitioner, )
)
v. ) CAUSE NO.: 2:14-CV-316-TS
)
SUPERINTENDENT, )
)
       Respondent. )

## OPINION AND ORDER

Collin M. Merrill, a *pro se* prisoner, filed an Amended Petition for Writ of Habeas Corpus [ECF No. 8] attempting to challenge his conviction and 55-year sentence for Murder by the Lake County Superior Court in 45G04-9706-CF-128 on May 1, 1998. The respondent argues that the habeas corpus petition must be dismissed because it is untimely. Habeas corpus petitions are subject to a strict one year statute of limitations.[1] The statute provides four possible dates

---

[1] 28 U.S.C. § 2244(d) provides that:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

from which the limitations period begins to run. The respondent argues that the Court should apply 28 U.S.C. § 2244(d)(1)(A) and calculate the 1-year period of limitation from the expiration of the time for filing a petition for certiorari with the United State Supreme Court following the Indiana Supreme Court's affirmance of his conviction and sentence on September 29, 1999. Using that date, the judgment became final on December 28, 1999. *See* Sup. Ct. R. 13(1); *Gonzalez v. Thaler*, 132 S. Ct. 641, 653–54 (2012). ("[T]he judgment becomes final . . . when the time for pursuing direct review in [the United States Supreme] Court, or in state court, expires.").

Merrill does not disagree with the calculation of those dates. However, he disagrees with the applicability of 28 U.S.C. § 2244(d)(1)(A). He argues that the Court should apply 28 U.S.C. § 2244(d)(1)(B) because he was impeded from filing a federal habeas corpus petition by rulings made by the Court of Appeals of Indiana. "I was prevented from filing my 2 successive [post-conviction relief] petitions by that court on 2-7-14 and 8-1-14 . . . ." (Supplement to Traverse 1, ECF No. 25.) "This [also] happened when the appellate court denied the petitioner a previous opportunity to get these issues in under a Motion to remand, upon the Notice of appeal . . . ." (Traverse to Resp't's Answer & Return to Order to Show Cause 4, ECF No. 16.)

This argument misunderstands the nature of the impediment required to invoke § 2244(d)(1)(B). "Although neither § 2244 nor this circuit has defined what constitutes an impediment for purposes of § 2244(d)(1)(B), the plain language of the statute makes clear that whatever constitutes an impediment must prevent a prisoner from filing his petition." *Lloyd v. VanNatta*, 296 F.3d 630, 633 (7th Cir. 2002) (per curiam) (internal quotation marks and emphasis omitted). In *Lloyd*, the Seventh Circuit explained that the petitioner's inability to obtain

trial transcripts from the state court did not prevent him from filing a habeas corpus petition. *Id.* ("Because Mr. Lloyd was able to file his petition without a complete copy of his trial transcript, the state's failure to provide a complete transcript did not prevent Mr. Lloyd from pursuing any of his claims, and § 2244(d)(1)(B) does not apply to this case."). The analysis used in *Lloyd* illustrates that § 2244(d)(1)(B) is referring to physical impediments, not legal ones. Merrill's argument is premised on the understanding that until he had exhausted his claims in the State courts, he would face additional legal hurtles in pursuing a federal habeas claim. Though the rulings by the Court of Appeals of Indiana, which were refusals to grant leave to file successive petitions, may have created legal impediments, they did not create physical ones. Merrill was not physically prevented from filing a federal habeas corpus petition. To the extent that his claims had not yet been exhausted in the State courts, he could have filed a federal habeas corpus petition and asked that it be stayed. *See Dolis v. Chambers*, 454 F.3d 721, 725 (7th Cir. 2006). If he was attempting to raise procedurally defaulted claims, he could have filed a federal habeas corpus petition and sought to excuse the default. *See Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013). Merrill was not impeded from filing a federal habeas corpus petition and therefore § 2244(d)(1)(B) is not applicable to this case.

Merrill makes no argument that any of his claims are based on a newly recognized constitutional right, meaning that § 2244(d)(1)(C) is not applicable to this case either. However, he does argue that his claims are based on newly discovered evidence, and therefore the Court will consider whether § 2244(d)(1)(D) is applicable. To qualify as a claim based on newly discovered evidence, the claim must be presented within one year from "the date on which the factual predicate of the claim or claims presented could have been discovered through the

3

exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). The Seventh Circuit has made clear that the time runs from the date when the evidence could have been discovered through diligent inquiry, not when it was actually discovered or when its significance was realized. *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2001). Merrill argues that he did not know what claims he had because he was young and lacked "legal sophistication and knowledge of existing case law . . . until approx. 9 years later after he put himself through schooling and college." (Traverse to Resp't's Answer & Return to Order to Show Cause 5.)

This same argument was presented in *Owens*, where the petitioner "propose[d] that the year to file a federal petition begins when a prisoner actually understands what legal theories are available," and was rejected by the Seventh Circuit because "[t]hat is not what § 2244(d)(1) says." *Owens*, 235 F.3d at 359.

> If § 2244(d)(1) used a subjective rather than an objective standard, then there would be no effective time limit, as Owens's case illustrates. Like most members of street gangs, Owens is young, has a limited education, and knows little about the law. If these considerations delay the period of limitations until the prisoner has spent a few years in the institution's law library, however, then § 2244(d)(1) might as well not exist; few prisoners are lawyers.

*Id.* Thus, 28 U.S.C. § 2244(d)(1)(D) is not applicable to this case.

Merrill argues that he "can show cause and prejudice for his un-timeliness." (Traverse to Resp't's Answer & Return to Order to Show Cause 6.) Cause and prejudice is an equitable doctrine which can excuse procedural default, *see Zatecky*, 721 F.3d at 465, but procedural default is not the issue here—untimeliness is the issue. Merrill does not specifically argue that he is entitled to equitable tolling, but that is the doctrine of equity that is applicable to excusing an

4

untimely habeas corpus petition. Because Merrill's cause and prejudice arguments are sufficiently related, the Court will examine whether Merrill is entitled to equitable tolling.

"[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks and citation omitted). Equitable tolling is an extraordinary remedy that is rarely granted. *Obriecht v. Foster*, 727 F.3d 744, 748 (7th Cir. 2013). "Petitioners bear the burden of proving that they qualify for equitable tolling." *Taylor v. Michael*, 724 F.3d 806, 810 (7th Cir. 2013). Merrill presents eleven reasons why he believes that he has cause to excuse his untimeliness. In the context of the equitable tolling analysis, these reasons are his explanation of what extraordinary circumstances stood in his way and prevented timely filing. Each of his eleven reasons explain that he "was unaware due to lack of Legal Representation that [various errors occurred during his trial and appeal.]" (Traverse to Resp't's Answer & Return to Order to Show Cause 9–11 (emphasis omitted).) Merrill was represented both at trial and during his direct appeal. *Merrill v. State*, 716 N.E.2d 902, 903, 905–06 (Ind. 1999). Therefore, these are merely arguments that Merrill did not subsequently understand the significance of those events because of his age and lack of legal training. However, as *Owens* explained, that is not an exceptional circumstance because most inmates are "young, ha[ve] a limited education, and know[] little about the law." *Owens*, 235 F.3d at 359. Moreover, Merrill's conviction became final in 1999. Yet it was nearly a decade later before he filed a post-conviction relief petition in the state court. (Return to Order to Show Cause Ex. C, at 13, ECF No. 13-3.) It would be more than four years later before he filed this habeas corpus case [*see* ECF No. 1]. "That lack of action does not show reasonable

5

diligence, and it does not show that extraordinary circumstances actually prevented [him] from filing." *Taylor*, 724 F.3d at 811. Thus, equitable tolling is not applicable to this case.

Merrill argues that failure to consider the merits of his claims would result in a fundamental miscarriage of justice. (Traverse to Resp't's Answer & Return to Order to Show Cause 7.) This too is an equitable doctrine which can excuse procedural default. *See Zatecky*, 721 F.3d at 465. In that context, the petitioner must prove that "a constitutional violation has [probably] resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995). Merrill also argues that "no reasonable factfinder would have found petitioner guilty of murder but for the Constitutional errors." (Mem. of Law in Supp. of Traverse to Resp't's Answer & Return to Order to Show Cause 9, ECF No. 18.) Therefore, these arguments will be analyzed as actual innocence claims which could excuse the filing of an untimely petition. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931–33 (2013). This, however, is a very difficult standard to meet. *Schlup*, 513 U.S. at 324.

> To invoke the miscarriage of justice exception to AEDPA's statute of limitations, we repeat, a petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence. Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing.

*McQuiggin*, 133 S. Ct. at 1935 (internal quotation marks and citation omitted). A petitioner who asserts actual innocence "must *demonstrate* innocence; the burden is his, not the state's." *Buie v. McAdory*, 341 F.3d 623, 626–27 (7th Cir. 2003). Furthermore, actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To support a claim of actual innocence the petitioner must come forward with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or

critical physical evidence—that was not presented at trial," *Schlup*, 513 U.S. at 324, and must show that "in light of new evidence, it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 536–37 (2006). Because of the difficulty to meet this standard, such claims are "rarely successful." *Schlup*, 513 U.S. at 324.

Here, the only new evidence Merrill argues was not presented at trial is a "Container . . . holding a pipe found at the Crime Scene." (Am. Pet. For Writ of Habeas Corpus 3, ECF No. 8) (internal citation omitted).) The Indiana Supreme Court opinion gives context to how the pipe is related to this case.

> Merrill attended Morton High School in Hammond with the victim, Peggy Carothers. The pair dated from the fall of 1996 until February 1997, when Merrill began dating someone else. After the two broke up, Carothers harassed Merrill and his new girlfriend, by, among other things, claims that Carothers was pregnant by Merrill.
> On April 28, 1997, Merrill discussed the best way to kill someone with several of his friends. He reported his conclusion that the best way to murder a person would be to lure the victim to the woods, deliver a blow to the head, and bury the body. He also identified his potential victim as having a tattoo on the ankle, which Carothers did. Two days later, on April 30, after Carothers ate lunch with her friends in the high school cafeteria around 11:00 a.m., she was accosted by Merrill on the way to her fifth period class. Before sixth period, another student saw Carothers walking with Merrill. Neither Carothers nor Merrill attended sixth period class that day. When Carothers' parents came to school to pick her up that afternoon, she had disappeared.
> In early May, two students found a hole in Scott Woods, located directly across from the high school. The next day, one of the two returned with a friend, partially uncovered the hole with a shovel, found a piece of clothing, and again left the site. Later, apparently that same day, as they were returning to the hole, the students encountered Merrill in the woods, and Merrill borrowed the shovel from them. Upon revisiting the hole approximately ten minutes later, the students discovered that it was re-covered. Several weeks later, the students again returned, dug up the hole, found what they thought might be a corpse, and called the police.
> In addition to Carothers' moderately to severely decomposed body, police found <u>a piece of metal pipe</u> and cigarettes in the grave. The pathologist concluded that Carothers had eaten thirty to sixty minutes before her death and her death was caused by a blunt force trauma to her head and asphyxiation obstruction. Her skull

7

> was fractured and her mouth and throat were packed with more soil than a person can normally swallow. Carothers was not pregnant.
> 
> At trial Merrill testified that although he was not in sixth period on the day of the murder, he did not kill Carothers. Rather, he skipped sixth period to smoke cigarettes in the bathroom. Merrill claimed to have been smoking with another student, Corey O'Hare. O'Hare testified that he did not smoke in the bathroom with Merrill on the day in question.

*Merrill*, 716 N.E.2d at 903–04 (footnote omitted, emphasis added).

Merrill argues that "Mike Reilly and Dan Bursac falsely testified that a Pipe was in . . . a box [and] Mike Reilly testified that his mark and case number is on [the box] which it clearly is not." (Am. Pet. For Writ of Habeas Corpus 3) (internal citation omitted).) However, none of this demonstrates that Merrill is factually innocent and did not murder Peggy Carothers. Even assuming that the pipe was not in the box and that the box did not have Reilly's mark and case number on it, Merrill provides no explanation for how looking at the pipe would prove that he was not the murderer. Therefore, he has not demonstrated actual innocence.

As a result, the 1-year period of limitation began on December 29, 1999, and expired a year later on December 28, 2000. Though Merrill filed a post-conviction relief petition in 2010, the habeas corpus deadline had already expired. Merrill sought leave to file two successive post-conviction relief petitions in 2014, but the state court's refusal to authorize a successive post-conviction relief petition did not "restart" the federal clock, nor did it "open a new window for federal collateral review." *De Jesus v. Acevedo*, 567 F.3d 941, 942–43 (7th Cir. 2009). Therefore, when Merrill filed this habeas corpus case in 2014, it was many years late. Because the petition is untimely, it must be denied.

Finally, pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the Court must consider whether to grant a certificate of appealability. When the court dismisses a petition on

procedural grounds, the determination of whether a certificate of appealability should issue has two components. *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). First, the petitioner must show that reasonable jurists "would find it debatable whether the court was correct in its procedural ruling." *Id.* at 484. Second, he must show that reasonable jurists "would find it debatable whether the petition states a valid claim of a denial of a constitutional right." *Id.* As previously explained, this petition is untimely and Merrill has not presented a colorable argument for how it could be either considered timely or how the untimeliness could be equitably excused. Because there is no basis for finding that jurists of reason would debate the correctness of these rulings or find a reason to encourage him to proceed further, a certificate of appealability must be denied.

## CONCLUSION

For these reasons, the Court DENIES habeas corpus relief because the petition is untimely and DENIES a certificate of appealability.

SO ORDERED on January 14, 2016.

> s/ Theresa L. Springmann
> THERESA L. SPRINGMANN
> UNITED STATES DISTRICT COURT
> FORT WAYNE DIVISION